NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRESPO, et al.,** *Plaintiffs*, v. **KISMET EXECUTIVE LIMOUSINE SERVICE, INC., et al.,** *Defendants.* | Civil Action No. 15-5706 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiffs Orlando Crespo, Tommy Dayioglu, Osman Taymis, Oktay Tuzer, Bulent Yenal, and Sahnur Sari's (collectively, "Plaintiffs") Motion for Summary Judgment, ECF No. 49, seeking a finding of liability against Defendants Kismet Executive Limousine Service, Inc. ("Kismet"), Teaneck Taxi, Inc. ("Teaneck Taxi"), and Emin Kahyoaglu (collectively, "Defendants") and dismissing Defendants' counterclaims. For the reasons set forth herein, Plaintiffs' Motion is **GRANTED**.

**I.    BACKGROUND**

The instant motions concerns both the Fair Labor Standards Act ("FLSA"), which Defendants allegedly violated by failing to compensate Plaintiffs for overtime, and the New Jersey Wage Payment Laws ("NJWPL"), which Defendants allegedly violated by subjecting Plaintiffs to

1

unlawful deductions from their pay. See Second Am. Compl. ("SAC") ¶¶ 85-97, 98-105, ECF No. 25.[1]

The undisputed background facts are as follows. Defendants Kismet and Teaneck Taxi are "sister companies" that share the same owner—Defendant Kahyoaglu. Pl. SOMF ¶ 4, ECF No. 49-1; Def. Response to Pl. SOMF ("Def. SOMF") ¶ 4, ECF No. 52-2. Defendants provide transportation services, and Plaintiffs are individuals residing in New Jersey who worked for Defendants as drivers. Pl. SOMF ¶ 1[2], ¶ 19; Def. SOMF ¶ 19. Unlike their "house drivers," Defendants classified the Plaintiff-drivers as independent contractors rather than employees and had them sign an "Independent Contractor Agreement." Id. ¶ 2, Def. SOMF ¶ 2; Certification of Emin Kahyaoglu ("Kahyaoglu Cert.") ¶ 6. Defendants provided Plaintiffs with cars and charged Plaintiffs for their use. Pl. SOMF ¶ 8.[3] Defendants tracked Plaintiffs' work through an application on their cell phones. Pl. SOMF ¶ 14, Def. SOMF ¶ 14. The remaining facts are disputed by the parties.

**A. Plaintiff's FLSA Claims**

Plaintiffs contend that their classification as independent contractors was erroneous under the FLSA. They assert that Defendants controlled their schedules, requiring them to work at least twelve hours a day for six days a week, dictated when and where they had to work, and determined the prices customers were charged. Pl. SOMF ¶ 6, 7; ECF No. 53-2. Plaintiffs also allege that

---

[1] Not at issue in the instant Partial Motion for Summary Judgment are Plaintiffs additional claims for FLSA retaliation and NJWHL retaliation. SAC ¶¶106-117, 118-129.
[2] Defendants deny this, asserting instead that Plaintiffs were independent contractors. Def. SOMF ¶ 1. Not only is this assertion a legal conclusion, but it also fails to contradict the fact that Plaintiffs job consisted of driving passengers for Defendants.
[3] Defendants note that Plaintiffs used their own smart phones to download an application that tracked their work and coordinated reservations, but they do not appear to dispute that Plaintiffs provided drivers with cars. Def. SOMF ¶ 8.

2

Defendants had strict uniform and grooming requirements and that, per an employee handbook, Plaintiffs were subject to termination and fines if they violated Defendants' policies. Id. ¶ 10. Moreover, Plaintiffs allege that they had to request vacations at least two weeks in advance and receive approval from Defendants. Id. ¶ 12. Plaintiffs further assert that they were not free to use time between jobs for personal reasons and that doing so would result in discipline. Id. ¶ 17. Additionally, Plaintiffs allege that they performed the exact same services as Defendants' "house drivers," who were paid as employees. Pl. SOMF ¶ 3. As a result, Plaintiffs allege that they were employees under the FLSA and that, because they worked in excess of forty hours per week, they are entitled to overtime payments. Id. ¶¶ 23-26.

Defendants deny these allegations, contending that they did not dictate Plaintiffs' work schedules, that they did not set prices, that there were not strict uniform or grooming requirements, that Plaintiffs were not disciplined for any failures to abide by Defendants' alleged policies, that Plaintiffs took time off without prior approval, and that Plaintiffs were free to use time in between jobs for personal reasons. Def. SOMF ¶¶ 6-10, 12, 17. Moreover, Defendants contend that the employee-house drivers, unlike Plaintiffs, are required to remain in a designated place near Defendants' office and are subject to greater control. Ex. 1 at 9:8-9. On the basis of these factual allegations, Defendants oppose Plaintiffs' contention that Plaintiffs were misclassified as independent contractors. Defendants also assert that Plaintiffs did not work in excess of forty hours per week—as demonstrated by the cell phone applications records—and would not be entitled to overtime payments even if they were classified as employees. Id. ¶ 23.

### B. Plaintiffs' NJWPL Claims

Plaintiffs contend that Defendants made unlawful deductions from their pay for car lease fees, credit card fees, car repair expenses, EZPass charges, cost of a company tie, traffic and

3

parking tickets, and "billing adjustments" in violation of the NJWPL. Pl. SOMF ¶ 28. Plaintiffs also allege that Defendants failed to return Plaintiffs' "security deposits," which were paid to secure Plaintiffs' use of vehicles leased from Defendants. Id. ¶ 29. Defendants agree that car lease fees were deducted, but deny the remaining alleged deductions. Def. SOMF ¶ 28-29.

### C. Defendants' Counterclaims

Also at issue here are Defendants' counterclaims for (1) breach of contract, (2) unjust enrichment, (3) breach of the covenant of good faith and fair dealing, (4) fraud, and (5) misrepresentations. See Answer to SAC ¶¶ 139-171, ECF No. 26. Defendants' breach of contract claim and breach of the covenant of good faith and fair dealing claim stem from Plaintiffs alleged violation of the terms of their Independent Contractor Agreements.[4] Id. ¶¶ 139-143; see also Ex. C, ECF No. 52-9. Defendants' unjust enrichment claim is premised on the contention that Plaintiffs will be unjustly enriched if they receive overtime payments, which were not contemplated in the Independent Contractor Agreement. Answer ¶¶ 144-152. Finally, Defendants contend that Plaintiffs made misrepresentations and committed fraud by representing that they would abide by the terms of the Independent Contractor Agreement, which does not provide for overtime payment. Id. ¶¶ 157-161.

Plaintiffs assert that Defendants failed to provide a damages calculation for their counterclaims, and have not identified which—if any—Plaintiffs engaged in conduct that supported the counterclaims. Id. ¶ 32. Defendants deny these allegations, asserting that the counterclaims depend on whether Plaintiffs provided notice to Defendants—a fact that apparently remains unknown to Defendants— and that the counterclaims are thus "not ripe" at this point in

---

[4] Specifically, Defendants allege that Plaintiffs failed to "complete the [c]ontract to its full term" and failed to "pay the rental amounts owed for the vehicle" under the contract. Answer ¶¶ 141-142.

4

the litigation. Declaration of Emin Kahyaoglu ("Kahyaoglu Decl.") ¶¶ 100-105. Apart from this discussion of notice, Defendants have not supported their counterclaims with facts or evidence in the record.

Plaintiffs seek partial summary judgment on their FLSA overtime claim and the NJWPL deduction claims, as well as dismissal of Defendants' counterclaims.

## II. DISCUSSION

### A. Motion for Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment when "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587. The party opposing summary judgment must make a showing sufficient to establish the essential elements of its claim. Celotex, 477 U.S. at 322–34.

### B. Plaintiff's FLSA Claims

Plaintiffs move for summary judgment on the FLSA claims arguing that Plaintiffs are employees of Defendant Kismet within the meaning of the FLSA and therefore entitled to overtime payments for hours worked in excess of forty per week, as well as liquidated damages. Defendants respond that Plaintiffs are independent contractors. The Court finds that there are disputed facts in the record on the threshold issue of whether Plaintiffs are employees or independent contractors, thereby rendering summary judgment inappropriate at this time.

Under Section 7(a) of the FLSA, employees are generally required to be paid overtime for all hours worked in excess of 40 hours per week. Whether a person is considered an employee

5

within the meaning of the FLSA depends on a six factor test: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. Zanes v. Flagship Resort Dev., LLC, No. 09-3736, 2012 WL 589556, at *5 (D.N.J. Feb. 22, 2012); Martin v. Selker Bros. Inc., 949 F.2d 1286, 1293 (3d Cir.1991). Neither the presence nor the absence of any particular factor is dispositive; rather the determination of whether the economic realities indicates an employer-employee relationship must be based on the "circumstances of the whole activity." Martin, 949 F.2d at 1293.

**1. Degree of Control**

Under the first factor, "courts should consider the degree of supervision over the worker, the control over the worker's schedule, and instruction as to how the worker is to perform his duties." Zanes, 2012 WL 589556, at *5. The Court is unable to determine whether this factor points toward an employer-employee relationship.

Plaintiffs allege that Defendants required Plaintiffs to work six days per week for at least twelve hours per day, that Defendants controlled Plaintiff's work schedules and often scheduled Plaintiffs to work up to seven days per week for up to sixteen hours per day, that Defendants' dispatch contacted Plaintiffs and assigned Plaintiffs to pick up and drop off Defendants' clients at prearranged locations and times, that Plaintiffs were required to submit vacation requests at least two weeks in advance for approval, that Defendants dictated Plaintiffs' attire, car maintenance, and procurement of customer supplies, and that Defendants enforced their policies by threatening

6

Plaintiffs with fines for a variety of offenses. Pl. SOMF ¶¶ 6, 7, 10, 12, 17. Defendants respond that Plaintiffs had different schedules and were not required to work twelve hours per day, that Plaintiffs took days off without reprimand, that Plaintiffs were not penalized for refusing a job or for failing to appear to drive, that Plaintiffs were free to use time in between jobs for personal reasons. Def. SOMF ¶¶6-10, 12, 17. Furthermore, Defendants contend that company policies regarding customer service, dress code, vehicle cleanliness standards are not enough to demonstrate an employer-employee relationship. See Arena v. Delux Transp. Servs., Inc., 3 F. Supp. 3d 1, 11 (E.D.N.Y. 2014).

The Court cannot determine whether this factor supports finding an employer-employee relationship. If, as Plaintiffs claim, Defendants required them to drive a minimum number of days and hours, then the control factor would favor finding an employer-employee relationship. See, e.g., Zanes, 2012 WL 589556, at *6. If, however, Plaintiffs were not required to work a minimum number of hours, were not required to give notice prior to taking personal days, could choose not to accept a trip with impunity, and were able to use the time between trips for personal reasons, then the control factor would support finding an independent contractor relationship. See, e.g., Arena, 3 F. Supp. 3d at 11. Under this latter set of facts, the difference between the "house drivers," who are required to report at a certain location and work a set number of hours, would further highlight why the Plaintiffs are classified as independent contractors. See Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 303 (5th Cir. 1998) (finding that the control factor favored independent contractor status where plaintiff-drivers, unlike employee-drivers who were subject to great supervision and control, set their own hours and days of work and were able to reject jobs without retaliation).

   **2. Opportunity for Profit**

The second factor considers whether Plaintiffs "faced a real opportunity for either a profit or loss in their operations, depending upon the amount of their investment and their skills in management." Donovan v. DialAmerica Marketing, Inc., 757 F.2d 1376, 1387 (3d Cir.1985). Courts examine "whether the worker's income depends on factors beyond his control or whether it is impacted by the worker's managerial skills." Zanes, 2012 WL 589556, at *6; Martin, 949 F.2d at 1294.

Plaintiffs allege that they had no meaningful opportunity for profit because their volume of business was dependent on the schedule set by Defendants at the start of each day and because Plaintiffs' income was dependent upon a fixed commission paid for by Defendants. See Zanes, 2012 WL 589556, at *6 (finding that plaintiffs-salespeople had no meaningful opportunity for profit both because their income depended on a fixed commission set by defendants and because their volume of clients depended on defendants' ability to attract potential clients). Defendants contend that Plaintiffs could control their profits by agreeing to accept more jobs. See, e.g., Chebotnikov v. LimoLink, Inc., No. 14-13475, 2017 WL 2888713, at *13 (D. Mass. July 6, 2017) (finding that the opportunity for profit factor weighed in favor of independent contractor status where there was no guaranteed amount of work and drivers could choose to accept more jobs). Again, the disputed facts in the record prevent the Court from determining whether Plaintiffs had the ability to control their profits. If Plaintiffs were unable to dictate their schedules or to refuse jobs, then they have no meaningful opportunity for profit. If Defendants could choose to accept more jobs, then it would support finding independent contractor status.

### 3. Investment in Equipment or Materials Required for the Task

The third factor considers "the alleged employee's investment in equipment or materials required for his task or his employment of helpers." Zavala v. Wal–Mart Stores, 393 F.Supp.2d

295, 328 (D.N.J. 2005) (citation omitted). Here, Plaintiffs leased Defendants' cars, and Plaintiffs did not employ others. This factor thus supports finding an employer-employee relationship.

   4. **Special Skill**

The Court next considers whether the services rendered by Plaintiffs require a special skill. It does not appear that driving for Kismet requires the kind of special skill that is typically indicative of an independent contractor. See, e.g., Chebotnikov v. LimoLink, Inc., No. CV 14-13475-FDS, 2017 WL 2888713, at *14 (D. Mass. July 6, 2017); Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 326 (S.D.N.Y 2001) (stating that plaintiff's duties as a chauffeur required no specialized skill); Saleem, 52 F. Supp. 3d at 541 (stating that "driving is not a specialized skill"). The cases cited by Defendants in opposition do not support a contrary conclusion as they involved instances where drivers were required to apply for and maintain taxi driver licenses, a requirement not imposed on Plaintiffs here. See, e.g., Arena v. Delux Transp. Servs., Inc., 3 F. Supp. 3d 1, 12 (E.D.N.Y. 2014); Leach v. Kaykov, 2011 WL 1240022 (E.D.N.Y. 2011). Consequently, this factor weighs in favor of finding an employer-employee relationship.

   5. **Degree of Permanence**

When addressing the degree of permanence of the working relationship, "courts should consider the exclusivity, length[,] and continuity of the relationship. Zanes, 2012 WL 589556, at *6 (citing Martin, 949 F.2d at 1295). Here, several Plaintiffs provided their services for multiple years, which is indicative of an employer-employee relationship. However, Plaintiffs did not sign a non-compete agreement,[5] and it appears the relationship was terminable by either party at any

---

[5] While the "Independent Contractor Agreement" includes a restrictive covenant preventing drivers from directly soliciting or diverting any "Company customer" away from Company to himself or a competitor, it does not appear to restrict the drivers' ability to offer their services elsewhere. Ex. C, ECF No. 52-9

9

time. Moreover, as discussed above, there is a dispute of fact as to whether Plaintiffs had the discretion to set their own schedule, work the hours of their choosing, or spend their free time in other pursuits. The Court cannot at this time determine whether this factor supports finding an employer-employee relationship.

### 6. Extent to Which the Work is an Integral Part of the Employer's Business

Finally, the Court must determine whether Plaintiffs' services are an integral part of Defendants' business. "The critical question in assessing the integral relationship factor is the nature of the work performed by the workers: does that work constitute an 'essential part' of the alleged employer's business?". Martin, 949 F.2d at 1295-96 (citations omitted). In other words, "regardless of the amount of work done, workers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." Id. (citations omitted). Defendants do not dispute that Plaintiffs are an integral part of the business, arguing only that Plaintiffs' work was interchangeable with other drivers and that, as a result, the weight of this factor is reduced. See Arena, 3 F. Supp. 3d at 13; Velu v. Velocity Express, Inc., 666 F.Supp.2d 300, 307 (E.D.N.Y.2009) (same); Browning v. CEVA Freight, LLC, 885 F.Supp.2d 590, 610 (E.D.N.Y. 2012) (same). Consistent with the reasoning in these cases, the Court finds that the sixth factor supports finding an employer-employee relationship but does not accord it substantial weight.

In sum, while certain factors support finding an employer-employee relationship as a matter of law, the record precludes granting of summary judgment on Plaintiffs' first cause of action for violations under the FLSA because material issues of fact remain as to whether Plaintiffs

are independent contractors or employees.[6] Even were the Court to determine Plaintiffs are employees, there is also a dispute of material fact as to whether Plaintiffs worked more than forty hours per week. Compare Pl. SOMF ¶23; ECF No. 49-7 with Def. SOMF ¶ 14, 23; ECF No. 52-3 at App'x.

### C. Plaintiffs' NJWPL Claims

Plaintiffs contend that Defendants violated the NJWPL by making wrongful deductions from Plaintiffs' compensation.

The NJWPL utilizes the "ABC" test to determine whether a worker is an employee of a company. Pursuant to the ABC test, a worker is presumed to be an employee, unless the company can establish all three of the following criteria:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

Hargrove v. Sleepy's LLC, 220 N.J. 289, 305 (S. Ct. 2015) (citing N.J.S.A. 43:21-19(i)(6)). At a minimum, Defendants cannot establish that the services provided by Plaintiffs are "outside the

---

[6] Despite this determination, the Court finds that neither the Motor Carrier Act ("MCA") Exemption, 29 U.S.C. § 213(b)(1), nor the Taxicab Exemption apply to Defendants. The MCA Exemption is inapplicable because—as Defendants admit—Plaintiffs operated vehicles weighing less than 10,000 pounds and transported fewer than eight passengers. McMaster v. E. Armored Services, Inc., 780 F. 3d 167 (2015) (affirming district court's determination that plaintiff, who drove vehicles weighing less than 10,000 and designed to transport fewer than eight passengers, was entitled to overtime). The Taxicab Exemption is inapplicable because the record demonstrates that Defendants operated a limousine service rather than a taxi business—drivers were not permitted to cruise for passengers, transportation was prearranged, and fares were determined in advance. Rossi v. Associated Limousine Servs., Inc., 438 F. Supp. 2d 1354, 1363 (S.D. Fla. 2006) (holding the same and collecting cases).

usual course of the business for which such service is performed." While a dispute of fact remains regarding Plaintiffs' status under the FLSA, Plaintiffs are nonetheless employees for purposes of the NJWPL. Defendants do not appear to dispute this contention.

New Jersey state law provides that an employer may not withhold or divert an employee's wages unless the employer is empowered to do so by New Jersey or United States law or unless the amounts withheld or diverted or for specific, itemized reasons set forth in the statute. See N.J.S.A. § 34:11-4-4. Plaintiffs contend that Defendants routinely made deductions from Plaintiffs' pay for car lease fees, credit card fees, car repair expenses, EZPass charges, traffic and parking tickets, and "billing adjustment." Defendants maintain that the only amount deducted from Plaintiffs' pay was for the lease of the vehicle. Def. SOMF ¶ 28. While it appears that the car lease fee constitutes an unlawful deduction in violation of New Jersey state law, the Court cannot determine the extent—if any—of further withholdings. There remain triable issues of fact as to Plaintiffs' NJWPL claims.

**D. Defendants' Counterclaims**

Plaintiffs contend that Defendants have not established damages and, thus, that Plaintiffs are entitled to summary judgment dismissing all counterclaims against them. The Court agrees. Defendants' answer to interrogatories did not identify any damages associated with their counterclaims and Defendants never provided any damages calculations. Pl. SOMF ¶¶ 30-32. Defendants attempt to create a dispute of material fact by arguing that the counterclaims depend on whether Plaintiffs provided notice of termination to Defendants pursuant to the Independent Contractor Agreement. See Kahyaoglu Decl. ¶¶ 100-105. It is Yet, Defendants do not come forward with any evidence on this issue. Moreover, Defendants have failed to produce any evidence whatsoever substantiating their alleged damages or supporting their counterclaims.

12

Consequently, the Court will grant summary judgment in Plaintiffs' favor, dismissing the counterclaims.

**III.     Conclusion**

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Summary Judgment in part and **GRANTS** Plaintiff's motion for summary judgment in part.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**
